UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

HIGHVIEW ENGINEERING, INC. and
DARROLL L. HAWKINS,                                                                    PLAINTIFFS

v.                                                                         CIVIL ACTION NO. 3:08-CV-647-S

UNITED STATES ARMY CORPS OF ENGINEERS and
ANN D. NUNN,                                                                           DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the court on the defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6), or in the alternative for summary judgment pursuant to Fed. R. Civ. P. 56. Defendants have also filed a notice, pursuant to the Federal Employees Public Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679 (the "Westfall Act"), purporting to substitute the United States as defendant in place of Ann D. Nunn, an Army Corps of Engineers employee named a defendant in both her official and individual capacities. Plaintiffs object to this action and have moved to strike. The defendants have also moved to dismiss (or for summary judgment); plaintiffs have not responded to the merits of that motion and instead request discovery under Fed. R. Civ. P. 56(f). For the reasons that follow, the court will deny the motion to strike, dismiss Counts I (in part), II, III, and IV, and order the plaintiffs to respond to the motion to dismiss with respect to part of Count I. Because there is no need for discovery at this point, the plaintiffs' request for Rule 56(f) relief will be denied.

**I**

The Clean Water Act, 33 U.S.C. § 1251 et seq., protects the nation's wetlands. As part of its duties in implementing this statute, the Corps of Engineers requires that persons or businesses whose

activities will adversely impact wetlands in one place compensate for the damage by establishing a new wetland elsewhere that will replace any lost biological functions. "Mitigation banking" is one way a firm can fulfill this demand: it pays a third party (a mitigation bank) to create a new wetland so that it can go ahead and adversely impact an old one without causing any net harm.

The Wetland Bank of Kentucky (WBK), an unregistered partnership between Highview Engineering, Inc. (a Kentucky corporation owned by Darroll Hawkins) and Jeffrey Henderman, was one such mitigation bank. In May 1999, WBK entered into a "Memorandum of Agreement" with the Corps of Engineers and various other federal and state agencies. Pursuant to that agreement, the government provided WBK with credits that it could then sell to developers; WBK was required to establish wetlands equivalent in value to the credits sold. It evidently failed to do so, and in January 2005 the Corps enlisted the assistance of the United States Attorney to sue the Wetland Bank for breach of contract and of the duty of good faith, negligent misrepresentation, and unjust enrichment. The parties settled for $70,000, and this court entered a Consent Judgment on March 30, 2006.

In April 2007, Hawkins began working with Phillip Harris to develop a proposal for the construction of a new wetlands mitigation bank near Paducah, Kentucky. Hawkins, on Harris's behalf, eventually submitted the resulting proposal to the Corps. Several months later, Katie McCafferty of the Corps contacted Harris to discuss the proposal, and informed him that Ann Nunn, an attorney with the Corps, had stated that (according to the complaint) "she did not want any wetlands mitigation bank proposals in which Dr. Hawkins played a role." (Compl. ¶ 17.) McCafferty also allegedly indicated that she and two of her supervisors were "uncomfortable" with having Hawkins involved, and "suggested" that Harris consider hiring another consultant. (*Id.*) Harris informed Hawkins of this conversation, and Hawkins exchanged correspondence with Nunn on the

subject. Harris thereafter dropped Hawkins and hired another consultant for work on the project. The Corps also allegedly removed Hawkins and Highview from its published "Wetland Consultant List." Hawkins claims that as a result of these actions he and his company have been *de facto* debarred from participating in any environmental mitigation program controlled by the Corps.

**II**

Highview and Hawkins instituted this suit against the Corps and Nunn, asserting four causes of action: violation of their Fifth Amendment right to due process of law, violation of their First Amendment right to freedom of association, interference with prospective and existing contractual relationships, and defamation. The first two counts are alleged against both defendants; the latter two are asserted only against Nunn in her individual capacity.

The defendants moved to dismiss. Counts III and IV (interference with contract and defamation) are, in their view, properly brought only against the United States, which retains sovereign immunity. Counts I and II, defendants argue, should be dismissed on the merits. The motion to dismiss is styled ". . . or Alternatively for Summary Judgment." The plaintiffs have responded to it as though it were only the latter, and insist that they are entitled to discovery pursuant to Fed. R. Civ. P. 56(f). We disagree, and conclude that because there is no need to reference any evidence external to the pleadings, the motion is properly considered one for dismissal. Discovery is thus unwarranted at this juncture, and the request for Rule 56(f) relief will be denied.

**III**

The next question to be addressed is the validity and effect of the defendants' "Notice of Substitution," which purports to replace Nunn with the United States as party to Counts III and IV

of this lawsuit (the tort claims for contractual interference and defamation). The Westfall Act, 28 U.S.C. § 2679(d)(1), provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

There is no question here that an agent of the Attorney General (in the person of Candace G. Hill, Acting United States Attorney for the Western District of Kentucky) has certified that Nunn was acting within the scope of her employment at the time of the incidents out of which Counts III and IV arose. Plaintiffs ask us to set aside that certification and retain Nunn as the defendant.

Plaintiffs first argue that because 28 U.S.C. § 2680(h) declares that "the provisions of this chapter . . . shall not apply to" claims arising out of, *inter alia*, libel, slander, and interference with contract rights, the substitution provisions of § 2679 are irrelevant to this case. They cite no case law for this proposition, presumably because none appears to exist. Whereas the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671 et seq., waives the federal government's sovereign immunity with respect to a range of torts, § 2680 excepts certain causes of action from this waiver, such that they cannot be brought against the government. Its purpose is to retain sovereign immunity, not to negate individual immunity created by a subsequent statute. The Westfall Act, though nominally included in the range of code sections covered by § 2680, was "intended to substitute the United States as the solely permissible defendant in all common law tort actions against Federal employees who acted in the scope of employment." *United States v. Smith*, 499 U.S. 160, 173 n.16 (1991) (*quoting* H. R. Rep., No. 100-700, at 6). Furthermore, the Westfall Act itself notes that, upon certification, actions against the government (which has thereby been substituted as defendant), "shall be subject to the

limitations and exceptions applicable to" cases in which the United States is the defendant—including those provided by §2680. 28 U.S.C. § 2679(d)(4). The Sixth Circuit recognizes this point. *See, e.g., Henson v. NASA*, 14 F.3d 1143, 1147 (6th Cir. 1994) (per curiam) ("The Federal Tort Claims Act excepts many torts from coverage. Among the torts excepted from coverage are slander and interference with contract. However, the employee may not be sued even when the alleged tort is not compensable due to an exception to the Federal Tort Claims Act" (*citing, e.g.*, *Smith*, 499 U.S. at 160).). The Westfall Act applies notwithstanding § 2680.

The Attorney General's certification is susceptible of judicial review; it is not the last word on the scope-of-employment question. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995). The question is one of law (rather than of fact), assessed in accordance with the law of the state where the conduct occurred. *Dolan v. United States*, 514 F.3d 587, 593 (6th Cir. 2008); *Singleton v. United States*, 277 F.3d 864, 870 (6th Cir. 2002). Where there are disputed issues of fact that bear on the certification issue, the district court is required to identify and resolve them—in an evidentiary hearing, if necessary—before deciding whether to uphold or reject the Attorney General's decision. *Dolan*, 514 F.3d at 593; *Singleton*, 277 F.3d at 870. In addressing any such issues, the certification itself "provides *prima facie* evidence that the employee was acting within the scope of employment." *Dolan*, 514 F.3d at 593 (*quoting Singleton*, 277 F.3d at 870-71). The plaintiff bears the burden of producing evidence to rebut the certification and demonstrate that the employee was not acting within in the scope of her employment. *Id.* If the allegations of the complaint, taken as true, are sufficient to establish that the employee was acting within the scope of her employment, the court need not take additional evidence or hold a hearing. *Id.*

To decide whether the certification holds up, we must set out the applicable principles of Kentucky agency law. The Kentucky Supreme Court has recently adopted the formulation of the Restatement (Third) of Agency § 7.07, which reads in relevant part: "An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 51 (Ky. 2008). The employee acts within the scope of his employment so long as his "purpose, however misguided, is wholly or in part to further the master's business." *Id.* (*quoting* W. Page Keeton et al., Prosser and Keeton on the Law of Torts 505 (5th ed. 1984)). Conversely, an act is outside the scope of employment only if undertaken on account of "purely personal motives" that are "in no way connected with the employer's interests." *Id.* (*quoting* Keeton et al., *supra*, at 505).

Plaintiffs have proffered nothing in support of their claim that Nunn acted outside the scope of her employment. The sole issue of fact identified in their briefing is Nunn's mental state at the time she committed the acts alleged. They ask us to hold off on resolving this issue until they have had the opportunity to complete discovery and depose Nunn for the purpose of ascertaining what exactly she was thinking. This is unnecessary, because the allegations of the complaint establish that her actions were undertaken in the course of furthering her employer's interests.

The conduct in question here is Nunn's alleged communication to Harris, via McCafferty, that the Corps was uninterested in working with Hawkins. This, the plaintiffs assert, interfered with Highview's contracts and prospective business by inducing Harris to sever ties and by casting Highview in a bad light with respect to other potential business partners. (Compl. ¶¶ 37, 39.) It also

assertedly defamed the plaintiffs by communicating "false allegations" to Harris. (Compl. ¶ 41.) The alleged statements (which were made to McCafferty, not Harris or Hawkins) fit within any plausible description of Nunn's duties as a Corps attorney. A lawyer's role is not limited to locating statutes and case citations: "In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social and political factors, that may be relevant to the client's situation." Ky. Sup. Ct. R. 3.130(2.1). One such consideration might well be a potential contractor's history of breaching contracts on the very subject of the proposal under consideration. It is plain that Nunn's purpose in making the statements was to further her employer's interests—viz., ensuring that the counterparties to its contracts were reliable. Nunn had an obvious and publicly available reason for thinking that the Corps should not do business with Hawkins, and she acted within the scope of her employment in saying so. Accordingly the certification is proper, and the substitution must be allowed. Plaintiffs' motion to strike will be denied.

The consequence of this ruling is dismissal. As noted above, the United States (which is now the only proper defendant as to Counts III and IV) has retained sovereign immunity with respect to defamation and interference with contract claims. *See* 28 U.S.C. § 2680(h); *Smith*, 499 U.S. at 166. Lacking subject-matter jurisdiction over an unconsented-to suit against the federal government, *see, e.g.*, *United States v. Mitchell*, 445 U.S. 535, 538 (1980), we have no choice but to dismiss Counts III and IV.

### IV

We next consider Count II, which asserts a constitutional free-association cause of action against the Corps of Engineers and Nunn in her individual capacity. (The Westfall Act does not apply to constitutional causes of action, so Nunn remains a proper party.) The defense has moved

to dismiss on various grounds. Under recent precedent, a complaint "only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (*quoting Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). While we must take the complaint's factual allegations as true in making this assessment, we need not accept the truth of legal conclusions or draw unwarranted factual inferences. *DirectTV, Inc.* 487 F.3d 271, 476 (6th Cir. 2007); *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

The Supreme Court has recognized two distinct types of constitutionally protected association: (1) freedom of expressive association, protected by the First Amendment, and (2) freedom of intimate association, a privacy interest derived from the Due Process Clause of the Fourteenth Amendment but also related to the First Amendment. *Anderson v. City of Lavergnem*, 371 F.3d 879, 881 (6th Cir. 2004) (*citing*, *e.g.*, *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984); *Akers v. McGinnis*, 352 F.3d 1030, 1035 (6th Cir. 2003)). Count II of the complaint specifically cites the First Amendment, so it may mean to invoke only the first of these; we will nonetheless address them both out of an abundance of caution. Plaintiffs have stated no cause of action under either theory.[1]

Expressive association doctrine protects the individual's right to join in groups to engage in activities protected by the First Amendment. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647 (2000); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). To claim this protection, a group must be associating for the purpose of engaging in "some form of expression, whether it be public or private." *Dale*, 530 U.S. at 647; *Sutherland v. Mizer*, 625 F. Supp. 2d 492, 499 ( E.D. Mich. 2008).

---

[1] We assume *arguendo* that no procedural or immunity-related hurdles stand in the plaintiffs' way here.

The complaint contains no allegation of expressive activity; it cites only an alleged "decision to prohibit Dr. Hawkins from associating with persons or entities involved in wetlands mitigation banking proposals." (Compl. ¶ 31.) Because there is no allegation of protected expression or speech, there can be no claim under the First Amendment.

"Intimate human relationships" are protected by the Due Process Clause "because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Jaycees*, 468 U.S. at 617-18. These relationships have been limited to a very few, primarily involving the family: marriage, childbirth, the raising and education of children, and cohabitation with one's relatives. *See id.* at 619. Quite obviously the business relationship involved in this case does not belong in this group.

The complaint thus alleges no valid freedom of association claim, and Count II will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## V

Finally we confront Count I of the complaint, which asserts a claim under the Fifth Amendment's Due Process Clause. Insofar as this claim is asserted against Nunn, it fails. While there is a protected liberty interest in not being barred from government contracts on the basis of allegations of fraud or dishonesty, *Transco Secur., Inc. v. Freeman*, 639 F.2d 318, 321 (6th Cir. 1981) (*citing Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*, 631 F.2d 953 (D.C. Cir. 1980)), no individual person debars a contractor. Rather, the Corps takes such actions as an entity. *See* 2 C.F.R. 180.800 ("A *Federal agency* may debar a person . . . ."). So to assert a due process cause of action against Nunn, plaintiffs must allege that she herself deprived them of some liberty or property interest other than the right to bid on contracts. As reflected in Count IV, Nunn's alleged actions

take the form of defamatory statements, and the only harm such statements cause is to the victim's reputation. But as this court and the Supreme Court have recognized, there is no constitutionally protected liberty or property interest in one's reputation. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991) ("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation."); *Azmat v. Shalala*, 2000 U.S. Dist. LEXIS 21986, at *4 (W.D. Ky. June 7, 2000) ("[T]here is no constitutional protection for the interest in reputation and damages which flow therefrom."). The plaintiffs have thus failed to allege that Nunn deprived them of any constitutionally protected interest, and their due process claim against her will be dismissed.

There remains one possible avenue for the plaintiffs to obtain relief. As noted above, the Corps is not permitted to debar a person from competing to win government contracts on the basis of charges of fraud or dishonesty without affording due process of law. *See Transco Secur., Inc.* 639 F.2d at 321. This is not a property interest; rather, a bidder's liberty interest is affected when he is denied the opportunity to bid on government contracts on the basis of a charge of fraud or dishonesty. *Id.* (*citing Old Dominion Dairy Prods.*, 631 F.2d at 953). The Fifth Amendment entitles such an individual to certain procedural safeguards, including notice of the charges, an opportunity to rebut them, and sometimes a hearing. *Id.* (*citing Gonzalez v. Freeman*, 334 F.2d 570 (D.C. Cir. 1964)). In the case of debarment, these proceedings are set forth in 2 C.F.R. §§ 180.800 et seq.

Plaintiffs' claim here is that they have been *de facto* debarred from working with the Corps in the future. It is undisputed that the Corps has never afforded the plaintiffs any process. Instead, the Corps maintains that the plaintiffs are not in fact debarred, and that they have therefore not been deprived of any protected liberty interest and were not due any process. Plaintiffs, however, maintain that Nunn told McCafferty (who told Harris) that "she did not want any wetlands mitigation bank

proposals in which Dr. Hawkins played a role," and that McCafferty "strongly 'suggested' that Dr. Harris consider other consultants." (Compl. ¶17.) Plaintiffs also allege that Hawkins was "removed, without notice, from the Corps' 'Wetland Consultant List.'" (Compl. ¶ 23.) The allegation is that Hawkins and Highview are for all intents and purposes barred from winning contracts with the Corps, though they did not receive the benefit of the prescribed procedures. If this is true, and the Corps could "suggest" that others not do business with the plaintiffs and erase their names from the published list of approved contractors, all without providing any notice or hearing on the ground that they have not actually been debarred, that would pretty well eviscerate all constitutional and procedural protections for the recognized liberty interest in competing for government contracts. This argument has at least some superficial appeal, but we must at present refrain from deciding whether the cause of action is "plausible" for purposes of the Corps' Rule 12(b)(6) motion.

We do not reach the merits because we are uncertain whether we have jurisdiction to do so. Sovereign immunity ordinarily protects federal government entities from suit. The Administrative Procedure Act (APA), 5 U.S.C. § 702, waives immunity as to federal agencies in certain situations, *see Dep't of the Army v. Blue Fox*, 525 U.S. 255, 261-63 (1999), but it requires (*inter alia*) that the challenged conduct constitute a "final agency action." 5 U.S.C. § 704. The Corps argues that it has taken no final action, and that accordingly it cannot be sued. As explained above, the plaintiffs have not responded to the motion to dismiss, and we are reluctant to dismiss this claim without allowing them an opportunity to do so. (The dismissals discussed above are so clearly warranted as not to necessitate a response.) We will therefore grant the plaintiffs' request for an opportunity to respond to the motion to dismiss insofar as it relates to Count I, as asserted against the Corps. We will then afford the defense the opportunity to file a reply.

We hasten to note that we do not intend at this juncture to consider evidence or to order summary judgment. Further, we will not revisit our conclusions as to the balance of the motion to dismiss at this time. The plaintiffs are requested to address only the questions whether this court has subject-matter jurisdiction over Count I as to the Corps, and whether the due process claim presents a plausible claim for relief.

*   *   *

A separate order will effectuate the decisions articulated above.