UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

HIGHVIEW ENGINEERING, INC. and
DARROLL L. HAWKINS,                                                                    PLAINTIFFS

v.                                                                        CIVIL ACTION NO. 3:08-CV-647-S

UNITED STATES ARMY CORPS OF ENGINEERS,                                  DEFENDANT

**MEMORANDUM OPINION**

In a prior opinion and order, 2010 U.S. Dist. LEXIS 50987 (W.D. Ky. May 24, 2010), the court dismissed all of the plaintiffs' complaint with the exception of a single claim: Count I, as asserted against the Army Corps of Engineers, which alleges that the Corps has de facto debarred the plaintiffs from doing business with the Corps without providing constitutionally guaranteed procedural protections. That claim had "at least some superficial appeal" on the merits, *id.* at *18, slip op. at 11, but we ordered additional briefing on the question whether we have jurisdiction to entertain it. The parties have now provided that briefing, and the issue is ripe for consideration.

The facts of the case were set out at some length in our prior opinion; we therefore provide only an abbreviated version here. The Wetland Bank of Kentucky ("WBK"), in which Highview Engineering, Inc.[1] was a partner, was party to a contract with the Corps of Engineers. WBK apparently failed in its duties under that contract, and the Corps sued for breach of contract and of the duty of good faith, negligent misrepresentation, and unjust enrichment. The parties settled for $70,000, and this court entered a Consent Judgment on March 30, 2006. In April 2007, Hawkins began working with Phillip Harris to develop a proposal for a new project involving the Corps. Hawkins submitted the proposal on Harris's behalf. A Corps representative later contacted Harris

---

[1] Darroll Hawkins owns Highview, a Kentucky corporation.

to inform him that Ann Nunn, an attorney with the Corps, had stated that (according to the complaint) "she did not want any wetlands mitigation bank proposals in which Dr. Hawkins played a role." (Compl. ¶ 17.) Harris was also informed that other Corps employees were "uncomfortable" with having Hawkins involved in any new projects, and it was "suggested" that he had better hire a different consultant. (*Id.*) Harris took this suggestion and ended his business relationship with Hawkins. The Corps also allegedly removed Hawkins and Highview from its published "Wetland Consultant List." The result of all this has been, according to Hawkins, to bar him and his company from working on any Corps projects.

The posture of the case is, still, a Fed. R. Civ. P. 12(b)(6) motion to dismiss. To survive such a motion, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009). While we must take the complaint's factual allegations as true in making this assessment, we need not accept the truth of legal conclusions or draw unwarranted factual inferences. *DirectTV, Inc.* 487 F.3d 271, 476 (6th Cir. 2007); *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

The Corps is not permitted to bar a person from participating in government contracts on the basis of fraud or dishonesty without affording the process due under the Fifth Amendment. *Transco Secur., Inc. v. Freeman*, 639 F.2d 318, 321 (6th Cir. 1981) (*citing Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*, 631 F.2d 953 (D.C. Cir. 1980)). The requisite process includes at a minimum notice of the charges and an opportunity to rebut them. *See id.* (*citing Gonzalez v. Freeman*, 334 F.2d 570 (D.C. Cir. 1964)). Plaintiffs argue that they have for all practical purposes been debarred from working with the Corps, without any process whatsoever. Such claims are not unknown to the

federal courts. *See, e.g.*, *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877 (2d Cir. 1996) (acknowledging that a state employee's letter instructing agencies to reject all proposals by the plaintiff constituted a de facto debarment subject to due process requirements, but finding those requirements adequately fulfilled in the instant case); *Old Dominion Dairy Prods.*, 631 F.2d at 961 n.17 (stating that the plaintiff's "claim of de facto debarment is not frivolous" but passing over the issue as not properly presented to the court); *TLT Constr. Corp. v. United States*, 50 Fed. Cl. 212, 215-16 (2001) ("Two options exist to establish a de facto debarment claim: 1) by an agency's statement that it will not award the contractor future contracts; or 2) by an agency's conduct demonstrating that it will not award the contractor future contracts." (*citing CRC Marine Serv., Inc. v. United States*, 41 Fed. Cl. 66, 84 (1998)); *Leslie & Elliott Co. v. Garrett*, 732 F. Supp. 191, 195, 198 (D.D.C. 1990) (stating that a court can find a de facto debarment where there is either "a statement that the agency will not award a contract to the disappointed bidder in the future" or "conduct of the agency" that indicates the existence of a de facto debarment, and concluding that the plaintiff had in fact been de facto debarred). But before we consider whether the plaintiffs have stated such a claim here, we must determine whether subject-matter jurisdiction exists.

As explained in the court's prior opinion, the Administrative Procedure Act (APA), 5 U.S.C. § 702, waives the United States's ordinary sovereign immunity from suit in certain situations, *see Dep't of the Army v. Blue Fox*, 525 U.S. 255, 261-63 (1999). This however requires (*inter alia*) that the challenged conduct constitute a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.[2] The Corps argues that it has taken no final action, and that accordingly

---

[2] In order for a challenged event to be a "final agency action," it must of course be an "agency action." *See ACLU v. NSA*, 493 F.3d 644, 678 (6th Cir. 2007). The APA defines an "agency action" as including "the whole or a part
continue...

it cannot be sued. For an agency action to be final, it must meet two conditions: "the action must mark the 'consummation' of the agency's decisionmaking process," and it "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted); *ACLU v. NSA*, 493 F.3d 644, 679 (6th Cir. 2007). Assuming for the moment that the complaint makes out a meritorious claim, a de facto debarment would be a final agency action. It would be the end of the decisionmaking process and not a merely "tentative" action. *Air Brake Sys. v. Mineta*, 357 F.3d 632, 639 (6th Cir. 2004) (*citing Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)). In *Air Brake Systems*, a government agency had published two letters explaining why the plaintiff firm's product did not comply with government standards. This was merely "tentative" action because it merely expressed opinions "conditioned on the untested factual submissions of the parties," and the letters lacked the force of law. *Id.* Here by contrast the alleged debarment was not tentative: the Corps's alleged refusal to consider proposals involving Hawkins was not conditional or subject to anyone's review. Furthermore, such a refusal would have the effect of vitiating the plaintiffs' liberty interest in participating in government bidding, and would thus determine the plaintiffs' rights for practical purposes. Accordingly we think that if the facts are as the plaintiffs say they are, the de facto debarment would constitute a final agency action such that the APA would permit review. *Cf. Peter Kiewit Sons' Co. v. U.S. Army Corps of Engineers*, 714 F.2d 163, 168 (D.C. Cir. 1983) (stating in dicta that a "de facto debarment was indeed final agency action" that "could be and was reviewed by the district court").

---

[2]...continue
of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). A de jure debarment would clearly be an "order" or a "sanction," and we think it just as plain that a de facto debarment, if proved, would be "the equivalent . . . thereof." Thus we have an "action."

Having assumed the existence of a de facto debarment for jurisdictional purposes, we now turn to the question whether the plaintiffs have successfully alleged one. As noted above, such a debarment may be proved in either of two ways: the plaintiff may show that the agency stated that it will not award him any future contracts, or he may show that the agency's conduct demonstrates that fact. *TLT Constr.*, 50 Fed. Cl. at 215-16; *Leslie & Elliott Co.*, 732 F. Supp. at 195. Viewed in the light most favorable to the plaintiff, the statements alleged in the complaint make out a plausible claim as to the first path to relief: a Corps employee allegedly "stated that she did not want any wetlands mitigation bank proposals in which Dr. Hawkins played a role," while another indicated that "she and two of her supervisors were 'uncomfortable' with proposals in which Dr. Hawkins was involved" and "strongly 'suggested' that Dr. Harris consider other consultants." (Compl. ¶ 17.) If proved, these statements could plausibly be interpreted to mean that the Corps would not award any future contracts to Hawkins or his businesses. The Corps cites a letter from Nunn to Hawkins for the proposition that no debarment took place, but in the present procedural context we must accept as true the plaintiff's well-pleaded facts and view them in the light most favorable to his claims. We conclude that he has successfully made out a de facto debarment claim. Because the Corps admits that it has not provided any process at all, successful allegation of the debarment itself is enough to state a cause of action under the Due Process Clause and the APA. Accordingly what remains of the motion to dismiss will be denied by separate order.